IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2006 Session

## STATE OF TENNESSEE v. RODRIGUES D. PRUITT, a/k/a RODRIGUEZ D. PRUITT, a/k/a RODRIQUEZ D. PRUITT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1094     Cheryl Blackburn, Judge**

**No. M2005-01862-CCA-R3-CD - Filed September 8, 2006**

The defendant was convicted of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, and sentenced as a career offender to thirty years in the Department of Correction, to be served consecutively to his current sentence.  On appeal, he argues that the trial court erred:  (1) in denying his motion to suppress the evidence; (2) by allowing a law enforcement officer to testify as an expert witness and disallowing defense counsel to fully cross-examine the witness; (3) by not instructing the jury on the lesser-included offense of facilitation; (4) by not instructing the jury that evidence of mere association with others involved in criminal activity is insufficient to establish guilt; (5) in denying his motion for judgment of acquittal because the evidence was insufficient to support his conviction; and (6) in sentencing him as a career offender. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined.  GARY R. WADE, P.J., Not Participating.

Richard McGee and James O. Martin, III, Nashville, Tennessee, for the appellant, Rodrigues Pruitt, a/k/a Rodriguez D. Pruitt, a/k/a Rodriquez D. Pruitt.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

Following the defendant's indictment for possession of .5 grams or more of cocaine with the intent to sell or deliver, possession of marijuana, and criminal trespassing, he filed a motion to

suppress the evidence, arguing that Metro Nashville Police Officer Johnnie Melzoni made an unlawful seizure which led to the search of his person and vehicle and that his subsequent statements to Melzoni were unconstitutional because they were unknowing and involuntary. At the January 20, 2004, suppression hearing, Officer Melzoni testified that at about 5:50 p.m. on June 27, 2002, while patrolling the Tony Sudekum and J.C. Napier areas, which were MDHA public housing projects, he saw the defendant standing alone off the sidewalk in a grassy area. Officer Melzoni parked his vehicle, approached the defendant, and asked "if [the defendant] would stop and talk to me." When he asked the defendant if he "was on a lease or if he was visiting anybody there on the lease," the defendant replied that he was not and said he had arrived in the area in the vehicle parked "right next to where he was standing." Officer Melzoni explained that the vehicle was parked "well over 12 inches from the curb . . . sticking out in the roadway, definitely causing a hazard for the traffic there." Officer Melzoni then approached the defendant's vehicle and saw, through the open driver's window, "trace amounts" of "green leafy plant material in the driver's seat that [he] recognized as marijuana." He then searched the defendant's vehicle and discovered in the console "a bag of off-white rock-like substance that weighed approximately 4.8 grams there on the scene, and field tested positive for cocaine base [and] another bag . . . of the same green leafy plant material that weighed approximately 2.5 grams." Officer Melzoni advised the defendant of his rights and arrested him. The defendant told Melzoni that he had not said anything about the drugs in the car "because he was on parole and . . . had four children and he had lots of bills so that is why he was selling the drugs." Melzoni explained that it had been his intention to issue a criminal trespassing citation to the defendant until he looked inside his car. He believed he issued a parking ticket to the defendant but was "not a hundred-percent sure." Melzoni said $618 was recovered from the defendant's person.

On cross-examination, Officer Melzoni said that, in addition to the arrest report, he completed a vehicle tow-in slip, a seizure form, a forfeiture warrant, and an affidavit. He acknowledged that he did not have an arrest warrant for the defendant when he approached him and had not observed the defendant violate any law. Officer Melzoni said he did not tell the defendant that he did not have to talk to him or that he could walk away. The defendant consented to a search of his person which did not reveal the presence of any drugs. However, when Officer Melzoni asked the defendant to search the vehicle, the defendant claimed the vehicle was not his. Melzoni acknowledged that, after he searched the defendant, he "walked" the defendant over to his patrol car to issue the trespassing citation and that the defendant was in the backseat of the patrol car with the doors closed when he searched the vehicle.

The defendant testified that, when Officer Melzoni approached him, he was standing in the grass about "seven or eight feet" from the vehicle. Officer Melzoni asked, "Can I have a word with you?" and the defendant agreed to speak to him because he "wasn't doing nothing wrong." The defendant acknowledged that he knew he did not have to speak to the officer. When Melzoni asked the defendant if he lived in the area, he told him that his grandmother lived "right around the corner." The defendant denied that Officer Melzoni searched his person and said that Melzoni placed him in the back of the police cruiser to "giv[e] [him] a trespassing charge." The officer then pulled the defendant out of the cruiser, took keys from his pocket, and searched the vehicle. The defendant

denied that he had arrived in the vehicle, saying it belonged to his girlfriend, but acknowledged he had the keys to the vehicle. He also denied that the drugs found in the car were his. He acknowledged that he had been convicted of attempted aggravated robbery and two counts of aggravated robbery in 1996.

The trial court subsequently entered a written order denying the defendant's motion to suppress and concluding:

> Here, Officer Melzoni's attention was drawn to Defendant's vehicle because it was parked an inappropriate distance from the curb and he believed it created a traffic hazard. As he was investigating the vehicle, he noticed Defendant and had a conversation with him; during this conversation, Defendant admitted the vehicle belonged to him. A review of the facts indicates that this encounter between Officer Melzoni and Defendant was consensual. As Officer Melzoni returned to the vehicle, he observed marijuana particles in plain view on the driver['s] seat. Officer Melzoni testified that the driver['s] window was down and he could clearly see into the vehicle, but he did not place any part of his body inside the vehicle until he observed the marijuana.
>
> Although the marijuana particles observed by Officer Melzoni on the driver['s] seat were not a large quantity, based on the officer's experience, he was able to recognize the particles to be marijuana, which gave him probable cause to search the vehicle. Accordingly, since the marijuana was in plain view, Officer Melzoni possessed sufficient probable cause to further search the vehicle. This search led to the subsequent recovery of additional marijuana and cocaine.

**Trial**

At the defendant's May 9, 2005, trial, Officer Melzoni again testified, basically giving the same testimony he offered at the suppression hearing. He identified the vehicle that the defendant said belonged to his girlfriend as a black 1993 Geo Prism with a tag number of AUQ-167. Melzoni said that the vehicle, along with the keys recovered from the defendant's person, was seized and towed. He said that the defendant gave 3325 Olson Lane as his home address but that address was not in the Tony Sudekum or J.C. Napier area.

Cassandra Franklin, a forensic analyst with the Tennessee Bureau of Investigation Crime Lab, testified that the results of her analysis of the cocaine and marijuana showed that the cocaine weighed three grams and the marijuana weighed 1.8 grams.

Sergeant William Mackall of the Metro Police Department Specialized Investigation Division, who was accepted by the trial court as an expert in the field of narcotics investigation, testified that he had been a police officer for fifteen years, including thirteen in Nashville, and had testified as an expert in narcotics investigation on prior occasions. He explained that he first had

-3-

worked for two years in the patrol division and then "spent the next ten years doing Crime Suppression which is street level drugs. Seven of those years, I was actually an officer and the last three years, I was a supervisor over the Crime Suppression Unit, and now I'm over Narcotics, which is larger amounts of drugs." He said that "over 95%" of the drug cases he had worked on involved crack cocaine and that he had participated in "thousands" of street level drug deals, as well as "approximately 2,000 drug related and gambling search warrants."

Sergeant Mackall further testified that, through his work, he had become familiar with the quantities and dollar amounts that crack cocaine sold for in Nashville. He said that $20 worth, which was approximately .2 grams of cocaine, was the typical amount dealt on the street and that a $20 rock of crack cocaine was "[p]robably smaller than an eraser head." He estimated the street value of the crack cocaine recovered from the defendant, based on the weight of 3.0 grams, at between $150 and $300. Sergeant Mackall said that people who were "purely a user of crack cocaine" typically had about .2 grams of cocaine on them and estimated the largest amount of money he had seen on someone who was only a user of the drug at between $30 and $40.

Sergeant Mackall testified that he previously had been Officer Melzoni's supervisor but was not his supervisor in June 2002. Asked his opinion as to Melzoni's truthfulness, Sergeant Mackall responded, "[H]e is a truthful officer."

Demetria Watkins of the Department of Safety, Title and Registration Division, testified that in June 2002 the 1993 Geo Prism was registered to Jeanetta Gordon, whose address was 3325 Olson Lane in Nashville.

The defendant elected not to testify at trial and rested his case without presenting any proof. At the conclusion of the trial, the jury convicted the defendant of possession of .5 grams or more of cocaine with the intent to sell or deliver, and the two remaining counts of the indictment were dismissed.

## ANALYSIS

### I. Denial of Motion to Suppress

The defendant first argues that the trial court erred in denying his motion to suppress the evidence and his statements made to Officer Melzoni after the discovery of the drugs in the vehicle, asserting that "no exception to the warrant requirement existed" and that his statements "were the product of the unlawful seizure and there was no sufficient attenuation of the taint of the unlawful seizure."

After conducting an evidentiary hearing on the matter, the trial court concluded that, because the marijuana particles were in plain view, Officer Melzoni had probable cause to search the vehicle. We review the trial court's denial of the defendant's motion to suppress by the following well-established standard:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the trial court's application of law to the facts, as a matter of law, is reviewed *de novo*, with no presumption of correctness. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). This court may consider the proof at trial, as well as at the suppression hearing, when considering the appropriateness of the trial court's ruling on a pretrial motion to suppress. See State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998) (holding that because the rules of appellate procedure "contemplate that allegations of error should be evaluated in light of the entire record," an appellate court "may consider the proof adduced both at the suppression hearing and at trial").

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides the basis for our analysis:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Additionally, Article 1, section 7 of the Tennessee Constitution provides

[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The Tennessee Supreme Court has explained that "[t]he purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials,'" State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)), and that "'[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment,'" id. (quoting State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)).

The defendant asserts that, at the time Officer Melzoni saw the marijuana, he was "locked in the back of [Melzoni's] patrol car when there was no legal justification for a custodial arrest." Officer Melzoni testified that as he walked past the vehicle that the defendant said he had arrived in and for which he had a set of keys, he observed, through the open driver's side window, small amounts of marijuana.[1]

Addressing the plain view doctrine, this court has explained the circumstances under which an officer can seize items without a warrant:

> The plain view doctrine provides that, under certain circumstances, the police may seize evidence in plain view without a warrant. Coolidge [v. New Hampshire], 403 U.S. [443,] 465, 91 S. Ct. [2022,] 2037 [(1971)] (plurality opinion). Under the federal constitution, prerequisites to the application of the plain view doctrine include: (1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was "immediately apparent," i.e., the officer possessed probable cause to believe that the item in plain view was evidence of a crime or contraband. Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136-2137, 124 L. Ed. 2d 334 (1993); Soldal v. Cook County, Illinois, 506 U.S. 56, 65-66, 113 S. Ct. 538, 545-546, 121 L. Ed. 2d 450 (1992); Horton v. California, 496 U.S. 128, 136-137, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112 (1990); [Arizona v.] Hicks, 480 U.S. [321,] 326-327, 107 S. Ct. [1149,] 1153-1154 [(1987)].

State v. Coulter, 67 S.W.3d 3, 43 (Tenn. Crim. App. 2001).

In our view, the salient facts as to the discovery of the drugs in the vehicle for which the defendant had a set of keys were that Officer Melzoni, standing where he had a right to be and looking through an open window, saw what appeared to be "trace amounts" of marijuana on the driver's seat and seized it as well as what appeared to be cocaine. Clearly, the plain view doctrine permitted this action.

Even assuming, *arguendo*, that Officer Melzoni unlawfully placed the defendant in the backseat of the officer's vehicle, it is clear that this act did not invalidate the seizure of the drugs from the defendant's vehicle. In United States v. Bentley, 29 F.3d 1073, 1075-76 (6th Cir. 1994), ATF agents, acting on a tip that stolen firearms were being transported in a vehicle, stopped it, an action for which prosecutors later conceded that they lacked probable cause to do so. As officers

---

[1] The defendant requests this court to view Exhibit 4C (marijuana particles) "to determine for itself whether it is reasonable to believe the substance in question could have been observed by the officer and used as a basis for the further search of the vehicle. Counsel would respectfully submit a review of this exhibit will establish the object was not in plain view, nor its incriminating nature readily apparent . . . ." However, Exhibit 4C is not a part of the record on appeal. Therefore, this argument is waived.

looked into the stopped vehicle, they saw "in plain view, Smith & Wesson firearm boxes inside a partially open green garbage bag on the floor of the passenger's seat." Id. at 1075. During a full search of the vehicle, agents found nine new handguns. The court agreed that the agents' stop of the vehicle without probable cause and arrest of the defendant did not invalidate their subsequent plain view of the firearm boxes and search of the vehicle. We conclude likewise that the defendant's arguments as to his being placed inside the officer's vehicle are irrelevant to the subsequent plain view search and seizure. We conclude that the record supports the trial court's determination that Officer Melzoni lawfully searched the vehicle and seized the drugs.

The defendant also argues that the trial court should have suppressed the statements he made to Officer Melzoni after the discovery of the drugs in the vehicle because any consent given "was invalid as it was the product of the unlawful search and seizure already established in this case." Officer Melzoni testified that after he searched the vehicle and discovered the drugs inside the console, he advised the defendant of his rights and arrested him. The defendant told Officer Melzoni that he understood his rights and agreed to talk to him. The defendant then told Officer Melzoni that he did not tell him about the drugs prior to the search because he was on parole and was selling the drugs because he had four children and "lots of bills." As we previously have set out, the search of the defendant's vehicle and seizure of the drugs were lawful. The trial court found that the defendant's statement was voluntary, and the record supports that determination.

## II.  Testimony of Sergeant Mackall

The defendant's argument regarding Sergeant Mackall's testimony is twofold. First, he argues that Sergeant Mackall should not have been allowed to testify as an expert witness; and, secondly, the trial court erred by not allowing defense counsel to cross-examine Mackall regarding his knowledge of police officers' truthfulness. The State argues that the defendant has waived the first part of this issue because his motion for a new trial only included the second part of the issue. We agree with the State that the expert witness claim has been waived because the defendant did not raise it in his motion for new trial. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); State v. Keel, 882 S.W.2d 410, 415-17 (Tenn. Crim. App. 1994). Accordingly, we conclude that this issue has been waived.

As to the second part of the defendant's issue, he argues that "to deny counsel the opportunity to confront Mackall on the truthfulness of officers allowed his prior endorsement of Melzoni's character to go unchecked." At trial, Sergeant Mackall was asked, during direct examination, about Officer Melzoni's reputation for truth in the community, and defense counsel objected. During a jury-out hearing, defense counsel sought to question Mackall about whether Metropolitan police officers, in general, lied. The trial court ruled that the question was not relevant to the defendant's case. Sergeant Mackall then testified that, in his opinion, Officer Melzoni was a "truthful officer."

Tennessee Rule of Evidence 608(a) provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.

Further, Tennessee Rule of Evidence 608(b) states, in pertinent part:

Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross examined has testified.

We agree with the State that the record supports the determination of the trial court that it was not relevant as to Officer Melzoni's veracity whether Sergeant Mackall believed that police officers, in general, lied.

### III. Instruction on Facilitation

The defendant next argues that the trial court erred by not instructing the jury on the lesser-included offense of facilitation. The State argues that the evidence did not support an instruction on facilitation.

When an issue is raised regarding the trial court's failure to instruct on a lesser-included offense, we must determine: (1) whether the offense is a lesser-included offense under the test adopted in State v. Burns, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser-included offense; and (3) whether the failure to instruct on the lesser-included offense constitutes harmless error. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). Under Burns, an offense is lesser-included if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

Facilitation of a felony is defined as: "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

Citing State v. Nash, 104 S.W.3d 495 (Tenn. 2003), the defendant argues that the proof at trial established that he "arrived at the location with someone else in a car that did not belong to him." In Nash, our supreme court determined that "the evidence was sufficient to support a jury instruction and subsequent conviction for facilitation of possession of marijuana with the intent to deliver." Id. at 498. The defendant's reliance on Nash is misplaced because, in that case, the defendant was one of two passengers in a car being driven by a third person when the vehicle was stopped by the police. Contrastly, in the present appeal, the defendant was alone when he was approached by Officer Melzoni and later admitted that he was selling the drugs because he had four children and "lots of bills." Accordingly, we conclude that, as to the offense of which he was convicted, there was no basis for a jury reasonably to conclude that the defendant's involvement was to provide "substantial assistance" to another to commit the crime. See State v. Rice, 184 S.W.3d 646, 676 (Tenn. 2006). Thus, it was proper that the trial court did not instruct the jury as to this offense.

## IV. Instruction on "Mere Association"

The defendant argues that the trial court erred by refusing to instruct the jury that mere association with other people involved in criminal activity is insufficient to establish the defendant's guilt. The State argues that the trial court properly denied the defendant's request because there was no evidence of other people committing criminal activity.

Although the trial court determined that the defendant's requested instruction that "mere association with a person who does, in fact, control the drugs, property or vehicle where the drugs are discovered is insufficient to support a finding that the defendant possessed the drugs" was not proper, the court did instruct the jury that "[m]ere presence i[n] an area where drugs are found is not in and of itself sufficient to support a finding that the person possessed the drugs." This court has held that "[t]he mere presence of a person in an area where drugs are discovered is not, standing alone, sufficient to support a finding that the person possessed the drugs." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Further, "mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Id.

In the present appeal, the defendant was alone when Officer Melzoni approached him and subsequently discovered drugs in the vehicle for which he had a set of keys. Furthermore, the defendant admitted to Officer Melzoni that the drugs were his and offered an explanation as to why he was selling them. Accordingly, we conclude that the trial court did not err by refusing to instruct the jury regarding "mere association."

## V. Denial of Motion for Judgment of Acquittal

The defendant argues that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support his conviction, saying that the "only evidence presented which established a nexus between [the defendant] and the vehicle was his alleged statements to [O]fficer Melzoni."

We apply the same standard when reviewing whether a trial court erred in denying a motion for judgment of acquittal as when reviewing whether the evidence was sufficient to sustain a conviction. See State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). When the sufficiency of the evidence is challenged on appeal, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor

on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To obtain a conviction in this case, the State was required to show beyond a reasonable doubt that the defendant possessed .5 grams or more of cocaine with the intent to sell or deliver it. See Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (Supp. 2005). The defendant asserts that the only evidence linking him to the vehicle in which the drugs were found was his confession to Officer Melzoni that he was selling the drugs to support his children and pay his bills. He claims that because he was on parole at the time and knew that such a statement "would result in going back to prison . . . common sense would indicate that [he] would not have made such a statement under these circumstances." However, by its verdict, the jury accredited the testimony of Officer Melzoni over that of the defendant. Furthermore, Officer Melzoni testified that the keys to the vehicle were recovered from the defendant's person, and the defendant, himself, testified at the suppression hearing that Officer Melzoni retrieved the keys to the vehicle from the defendant's pocket prior to searching it. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction.

### VI. Sentencing as Career Offender

The defendant lastly argues that he should have been sentenced as a Range II, rather than a career, offender because the six prior aggravated robbery convictions from two separate cases relied upon by the trial court should have been considered as only two convictions because each of the counts in the two cases occurred within the same twenty-four-hour period. The State argues that the twenty-four-rule does not apply to the defendant's classification because "aggravated robbery by its nature threatens bodily injury."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871

S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

A career offender is a defendant who has at least six prior felony convictions of any classification (Classes A, B, C, D, or E) if the defendant's current conviction offense is a Class D or E felony. Tenn. Code Ann. § 40-35-108(a)(3) (2003). As previously discussed, possession of .5 grams or more of cocaine with the intent to sell or deliver is a Class B felony. In determining the number of prior convictions for the purpose of offender status, "[c]onvictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-108(b)(4) (2003). This is often referred to as the "twenty-four-hour merger rule." A defendant's "prior convictions" will include "convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense cognizable by the laws of this state." Tenn. Code Ann.§ 40-35-108(b)(5) (2003). If the trial court finds a defendant is a career offender beyond a reasonable doubt, the defendant "shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c) (2003). When a defendant has the requisite number of prior felonies, "a trial court has no discretion with respect to the length of the sentence and must impose the maximum sentence pursuant to Tenn. Code Ann. § 40-35-108." State v. Rita Davis, No. M2000-03227-CCA-R3-CD, 2001 WL 1398138, at *3 (Tenn. Crim. App. Nov. 9, 2001), perm. to appeal denied (Tenn. May 6, 2002). Either party may appeal the finding that the defendant is or is not a career offender. Tenn. Code Ann. § 40-35-108(d) (2003).

The presentence report shows that the defendant has prior convictions for four counts of aggravated robbery in Rutherford County on July 29, 1996, and two counts of aggravated robbery in Davidson County on September 12, 1996. Copies of the judgments for these offenses reflect that the offense date for the Rutherford County convictions was February 4, 1996, and the offense date for the Davidson County convictions was October 5, 1995. Aggravated robbery is defined as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the

victim to reasonably believe it to be a deadly weapon; or [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a). Aggravated robbery is a Class B felony. Id. at (b).

At the conclusion of the sentencing hearing, the trial court determined:

[The defendant] has been convicted of six prior felony convictions in two separate cases of the charge of aggravated robbery. Clearly, aggravated robbery can be either accomplished, the person either has to suffer bodily injury or can be accomplished with the use of a deadly weapon, which is basically placing the person in fear or by the use of violence.

The Court's position is that does satisfy the definition that is contained in [Tennessee Code Annotated section] 40-35-108, which talks about convictions for multiple felonies committed as part of a single course of conduct within 24 hours constitute one conviction; however, acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed as a single course of conduct.

I can't think of anything that more obviously fits within that rule tha[n] an aggravated robbery charge . . . . Obviously, [the defendant] is a career offender; therefore, the only sentence available to this Court is 30 years at 60%, so that will be the sentence.

The record abundantly supports this finding by the trial court and sentencing of the defendant.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE